UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANGELA C.,

                Plaintiff,                  **DECISION AND ORDER**

    v.

                                               1:24-CV-00249 EAW

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

## INTRODUCTION

Represented by counsel, plaintiff Angela C. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 7; Dkt. 8). For the reasons discussed below, the Commissioner's motion (Dkt. 8) is granted, and Plaintiff's motion (Dkt. 7) is denied.

## BACKGROUND

Plaintiff protectively filed her application for SSI on December 6, 2021. (Dkt. 6 at 79).[1] In her application, Plaintiff alleged disability beginning on December 6, 2021, due

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

- 1 -

to bipolar disorder, post-traumatic stress disorder, Crohn's disease, back problems, and insomnia. (*Id.* at 97-98). Plaintiff's application was initially denied on May 11, 2022. (*Id.* at 122-33). A telephone hearing was held before administrative law judge ("ALJ") Edward T. Bauer on April 12, 2023. (*Id.* at 49-78). On June 14, 2023, the ALJ issued an unfavorable decision. (*Id.* at 11-36). Plaintiff requested Appeals Council review; her request was denied on February 22, 2024, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he

deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

**I.     The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since December 6, 2021, the application date. (Dkt. 6 at 16).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "mild degenerative disc disease of lumbar spine, bipolar disorder, post-traumatic stress disorder, anxiety disorder, and panic disorder." (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of dermatitis, gastro-esophageal reflux disease, corneal abrasion, abdominal pain, and right knee sprain, were non-severe. (*Id*. at 16-17). With respect to Plaintiff's representations that she suffered from Crohn's disease, the ALJ concluded that this was not a medically determinable impairment. (*Id*. at 17).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 1.15, 12.04, 12.06, and 12.15 in reaching his conclusion. (*Id.* at 17-19).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work, as defined in 20 C.F.R. § 416.967(b), except that Plaintiff:

> is limited to simple, routine tasks. She is limited to work that requires no more than occasional contact with co-workers. [Plaintiff] cannot have public contact. [Plaintiff] is able to adapt to minor changes.

(*Id.* at 19).

At step four, the ALJ found that Plaintiff could perform her past relevant work as a housekeeper, since that work did not require the performance of work-related activities precluded by the assessed RFC. (*Id.* at 34). The ALJ further concluded that, considering Plaintiff's age, education, work experience, and RFC, there were further jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of injection molder, electronics sub-assembler, and stock checker. (*Id.* at 34-35). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 35-36).

II.     **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the Commissioner erred by (1) failing to incorporate into the RFC limitations related to social interaction, and (2) failing to adequately evaluate the supportability and consistency of the

medical opinions offered by Hillel Glover, M.D., Stephen Farmer, Psy.D., and Frank Galante, M.D. (Dkt. 7-3 at 9).

### A. The RFC Assessment

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *id.*, an ALJ is not a medical professional, and therefore he "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted). However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)). In arriving at the RFC, the ALJ's reasoning "must always be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial

evidence." *Gail F. v. Comm'r of Soc. Sec.*, No. 21-CV-120-FPG, 2022 WL 17578465, at *4 (W.D.N.Y. Dec. 12, 2022) (quotations and citation omitted).

Here, the RFC includes limitations addressing Plaintiff's ability to interact with others. Specifically, the RFC provides that Plaintiff is limited to work that (1) requires no more than "occasional" contact with co-workers, and (2) requires no contact with the public. (Dkt. 6 at 19). For the following reasons, the Court finds that these limitations are supported by substantial evidence in the record.

First, an RFC limiting Plaintiff to "occasional" contact with co-workers, and no interaction with the public, is consistent with the assessments offered by the medical providers in the record who, as discussed in more detail below, opined that Plaintiff had moderate limitations for interacting with others. *See, e.g., Gwendolyn H. v. Kijakazi*, No. 3:22-CV-00433, 2022 WL 19406189, at *8 (D. Conn. Dec. 16, 2022) (explaining that the ALJ accounted for the plaintiff's "marked limitations" for interacting with the public by restricting her to jobs requiring "no public interaction," and accounted for the plaintiff's "moderate limitations" for getting along with co-workers by restricting her to "occasional interaction" with co-workers and supervisors), *adopted*, 2023 WL 2624338 (W.D.N.Y. Mar. 24, 2023); *see also Reilly v. Colvin*, No. 1:13-cv-00785 (MAT), 2015 WL 6674955, at *3 (W.D.N.Y. Nov. 2, 2015) ("[G]enerally a limitation to only 'occasional' or 'limited' contact with others has been found sufficient to account for moderate limitations in social functioning."). Here, several medical sources assessed Plaintiff as having moderate to marked limitations for interacting with supervisors, co-workers, and the public. (*See* Dkt. 6 at 31 (discussing the observations of Dr. Farmer, the consultative examiner, that Plaintiff

was cooperative and friendly, her manner of relating and social skills were adequate, and his assessment that Plaintiff had "moderate to marked" limitations for interacting adequately with supervisors, co-workers, and the public); *id*. at 32-33 (discussing Dr. Galante's opinion that Plaintiff had moderate limitations for interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes); *id*. at 33 (discussing opinion offered by J. May, Ph.D., an advising psychologist for DDS, that Plaintiff had moderate limitations for interacting with others); *id*. at 33-34 (discussing the opinion offered by P. Roy-Petrick, Ph.D., an advising psychologist for DDS, that Plaintiff had the capacity for tasks in a low-contact environment, and that she had a moderate limitation for interacting with others)).

Plaintiff argues that the RFC fails to account for all the social limitations assessed by certain medical sources in the record. (*See* Dkt. 7-3 at 12). First, as explained above, an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Matta*, 508 F. App'x at 56; *see also Gwendolyn H*., 2022 WL 19406189, at *7 (explaining that "it is well-established that the RFC does not need to perfectly correspond to any one medical opinion," that "the ALJ [is not] required to adopt each and every limitation identified merely because [he] gave weight to an opinion," and "[t]here is no absolute bar to crediting only portions of medical source opinions, . . . and an ALJ is free to rely on portions of several opinions to craft the RFC" (citations omitted)). The fact that the ALJ did not adopt precisely the limitations contained in any one medical source opinion does not require remand. And, as further explained below, for those

- 8 -

limitations that were not assessed as part of the RFC, the ALJ sufficiently explained why he found that those limitations were not supported by the record.

Plaintiff also argues that the RFC does not account for medical opinion evidence assessing limitations for Plaintiff's ability to interact with supervisors, specifically. (Dkt. 7-3 at 15). The Court has reviewed the record in its entirety, and finds that even if the ALJ erred by failing to include limitations for Plaintiff's ability to interact with supervisors, any such error is harmless. At the administrative hearing, the ALJ asked the vocational expert (VE) how an additional limitation for occasional contact with supervisors would affect the jobs that Plaintiff could perform. (Dkt. 6 at 72-73). The VE responded that "there might be a slight erosion," but that "I think they'd be okay." (*Id.*). In other words, even if the ALJ had included a further limitation for interactions with supervisors, it would not have impacted the determination that Plaintiff could perform unskilled work, or her ability to perform the representative occupations identified by the VE. *See, e.g., Nathan P. v. Comm'r of Soc. Sec.,* No. 19-CV-954Sr, 2021 WL 1139849, at *5 (W.D.N.Y. Mar. 25, 2021) (explaining that "moderate limitations in work related functioning do not significantly limit a plaintiff's ability to perform unskilled work," that "[a]n ALJ need not call out every moderate limitation by name, provided that the RFC appropriately reflects such limitations," and "[m]ore specifically, a moderate limitation in a plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors is consistent with an RFC limiting plaintiff to unskilled work"); *Poles v. Berryhill*, No. 17cv6189(MAT), 2018 WL 1471884, at *3-4 (W.D.N.Y. Mar. 26, 2018) (where VE testified that a moderate limitation for interacting with supervisors would not impact an

individual's ability to perform unskilled work and specifically the individual's ability to perform the representative occupations identified by the VE, the ALJ's failure to include in his RFC finding a limitation on the plaintiff's ability to interact with supervisors was harmless); *Washburn v. Colvin*, 286 F. Supp. 3d 561, 565-66 (W.D.N.Y. 2017) (finding harmless the ALJ's failure to discuss opinion that the plaintiff was moderately limited in responding appropriately to criticism from supervisors, since "[e]ven if fully credited, that opinion is consistent with the RFC as determined by the ALJ, which limits plaintiff to, among other things, unskilled work requiring no interaction with the public and no teamwork," and "[i]t is well settled that a limitation to unskilled work sufficiently accounts for moderate limitations in work-related functioning"). Accordingly, remand is not required on this basis.

      **B.**    **Assessment of Opinion Evidence**

Plaintiff next argues that the ALJ improperly evaluated the opinions offered by Dr. Glover, Dr. Farmer, and Dr. Galante, specifically by failing to evaluate the supportability and consistency factors. (Dkt. 7-3 at 9).

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id*. Those factors include: (1) supportability; (2) consistency; (3)

relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at § 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at § 416.920c(a). With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 416.920c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id*. at § 416.920c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G.*

*v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how [he] considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. § 416.920c(b)(2). The ALJ may—but is not required to—explain how he considered the remaining factors. *Id*.

Plaintiff challenges the ALJ's assessment of the opinions offered by Dr. Glover, Dr. Farmer, and Dr. Galante, arguing that the ALJ failed to evaluate the supportability and consistency of these opinions. This argument is belied by the record. The ALJ discussed the opinions offered by these medical sources at length, including by evaluating the consistency and supportability factors. (Dkt. 6 at 28-33). For example, with respect to the opinions offered by Dr. Glover, the ALJ explained that he did not find those opinions to be generally persuasive, including because the marked and extreme limitations assessed by Dr. Glover were "inconsistent with the overall evidence of record and Glover's own mental status findings and Dr. Glover did not address this inconsistency." (*Id*. at 30). The ALJ then provided specific citations to the record, wherein Plaintiff was assessed as having largely normal mental status examinations. (*Id*. at 30-31).

Similarly, with respect to the opinions offered by Dr. Farmer, the ALJ found that the opinions offered by him were "partially persuasive," including because his assessment that Plaintiff had moderate to marked limitations in several areas of functioning was inconsistent with documentary evidence in the record and Plaintiff's own hearing testimony, which revealed that she could perform several activities of daily living, including caring for her grandchildren. (*Id*. at 31-32). The ALJ further noted that Dr.

Farmer's assessment was inconsistent with the results of his own mental status examination of Plaintiff, and with the results of mental status examinations performed by Dr. Glover. (*Id*. at 32 (discussing several mental status examinations through 2022, which were largely normal)).

Finally, with respect to the opinions offered by Dr. Galante, the ALJ found that those opinions were not persuasive, including because Dr. Galante's assessment of Plaintiff's ability to maintain attention and concentration for extended periods of time was "inconsistent with the results of mental status examinations of the claimant, which revealed that she was consistently alert and oriented when she presented for evaluations, as described above and within this decision." (*Id.* at 32-33).

Plaintiff's argument concerning the assessment of the opinion evidence amounts to no more than her disagreement with the ALJ's assessment of these opinions, which is not a basis for remand. *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00652 EAW, 2024 WL 2812434, at *10 (W.D.N.Y. June 3, 2024) ("While Plaintiff may disagree with the ALJ's consideration of the medical evidence of record, that does not mean that . . . the RFC finding is not supported by substantial evidence."). It is clear from the 23-page written determination and six-page discussion of the opinion evidence that the ALJ carefully considered the medical opinions in the record, including the supportability and consistency factors. To the extent there were medical opinions with more severe assessments of Plaintiff's functioning than was assessed in the RFC, where there is conflicting evidence in the record, it is the ALJ's duty to consider and weigh those discrepancies—and it is not the court's function to re-weigh the evidence. *Krull v. Colvin*, 669 F. App'x 31, 32 (2d

Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."). Here, the ALJ's assessment of the opinion evidence is thorough and well-supported by other medical evidence in the record. Remand is not required on this basis.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 8) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 7) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: January 2, 2025
       Rochester, New York